18551

COLONIAL LIFE & ACCIDENT INSURANCE COMPANY, Appellant, v. SOUTH CAROLINA TAX COMMISSION, Respondent

(149 S. E. (2d) 777)

*Messrs. McKay, McKay, Black & Walker,* of Columbia, *for Appelant,*

*Messrs. Daniel R. McLeod, Attorney General,* and *Joseph C. Coleman* and *Joe L. Allen, Assistant Attorneys General,* of Columbia, *for Respondent,*

August 18, 1966.

LIONEL K. LEGGE, Acting Associate Justice.

Appellant paid under protest and brought this action to recover $5,447.76 assessed against it by respondent for additional license taxes, and interest thereon, for the years 1958, 1959, 1960 and 1962. It appeals from a circuit court decree upholding the assessments and dismissing the action.

Appellant is a South Carolina corporation, with its home office in Columbia. During the period with which we are here concerned its operations extended into some thirty-five states. Ninety-seven per cent of its business is accident insurance, with specified death benefits; it also writes life, and combination accident and life, policies.

The license taxes in question were imposed under the provisions of Sections (A), (B), (C) and (D) of Section 8

of Act No. 234 of 1955 (49 Stat. at L. 329), which appear in the 1962 Code as Sections 37-130.1, 37-130.2, 37-130.3 and 37-130.4.

37-130.1 imposes upon each domestic life insurance company an annual license tax in an amount equal to two per cent of the total premium income from policies issued to residents of this state or paid from a point within this state, less dividends or bonuses paid or credited to such policyholders, as collected from citizens or residents of this state during the year next preceding the date of the tax return. It provides that such license tax shall not exceed five per cent of the company's net income as determined under the provisions of Chapter 5 of Title 65 (the South Carolina income tax statute) ; and further, that "in addition to the deductions allowed by such chapter there shall be allowed in computing net income any addition to policy reserves as may be required by the Commissioner, but no more than such required amount."

37-130.2 imposes upon each domestic insurance company of any other class a like annual license tax of two per cent of total premium income from insurance contracts issued to residents of this state or paid from a point within this state, less return premiums on risks and less dividends paid or credited to policyholders in this state, during the year next preceding the date of the return. It provides that such license tax shall not exceed five per cent of the company's actual net income as determined under the provisions of Chapter 5 of Title 65; and further, that "In addition to the deductions allowed by such chapter there shall be allowed in computing net income any addition to unearned premium reserves as may be required by the Commissioner, but no more than such amount required."

(The "Commissioner" referred to in 37-130.1 and 37-130.2 is the Chief Insurance Commissioner of South Carolina.)

37-130.3 provides that the license taxes imposed under 37-130.1 and 37-130.2 shall be administered and collected

by the South Carolina Tax Commission, which "may make such rules and regulations, not inconsistent with law, necessary for the proper administration and collection of taxes imposed in such sections, and such rules and regulations shall have full force and effect of law."

37-130.4 provides that returns for such license taxes shall be filed with the Tax Commission on or before the fifteenth day of the third month following the close of the company's accounting period; that the tax shall be paid in full when the return is filed; and that the Tax Commission may, for good cause shown, grant a reasonable extension of time for filing the return and paying the tax, "provided, that interest at the rate of six per cent per annum shall be paid on any tax due from the date the return and tax was originally due to the date of payment."

The controversy here relates to: (1) certain deductions, claimed by Colonial and disallowed by the Commission, in the computation of Colonial's liability for license taxes for the years 1958, 1959, 1960 and 1962; and (2) the consequences of an agreement, between an auditor of the Commission and Colonial, as to the method of computing such liability for the year 1958, and acceptance by the Commission of the tax paid pursuant to that agreement.

In support of its contention that all taxes paid by it in South Carolina are deductible, Colonial relies upon Section 65-259(4), which allows, among deductions in computing net income, "taxes for the income year" except income and inheritance taxes and those assessed for local benefits. This contention disregards the fact that certain taxes paid by Colonial in South Carolina are for the benefit of its business in other states as well as this, *e. g.*: county and municipal property taxes on its home office and its furnishings, which enure to the benefit of its entire organization, as do taxes relating to employment of personnel of the home office, whose services are rendered to its agents and agencies throughout the whole area of its

operations. It would lead to the unreasonable conclusion that the General Assembly intended the tax statutes in question, which exempt from the license taxe base Colonial's income from policyholders in other states, to allow deduction for income and license tax purposes not only of those taxes that are fairly referable to the production of taxable South Carolina income, but also of those that are referable to the production of the tax-free out-of-state income. It overlooks, too, Section 65-222.2, which declares that where a taxpayer transacts business partly within and partly without this state his income tax shall be imposed upon a base "which reasonably represents the proportion of the trade or business carried on within this State." The lower court properly held that the provisions of 65-259(4) permitting tax deductions in the computation of taxable income, and those of 65-222.2, should be considered together. In the exercise of its functions, under 37-130.3, of administering and collecting the license tax, the Commission has the power and the duty, in cases within the purview of 65-222.2, to prescribe a method for arriving at a tax base "which reasonably represents the proportion of the trade or business carried on within this State"; and its determination thereabout will not be overthrown by the courts except upon a showing, absent here, that it is arbitrary, discriminatory or unreasonable. Cf. *Atlantic Coast Line R. Co. v. Public Service Commission,* 225 S. C. 196, 81 S. E. (2d) 357; *Griggs v. Hodge,* 229 S. C. 245, 92 S. E. (2d) 654.

Missouri is one of the states in which Colonial operates. By an order dated January 3, 1962, the Superintendent of Insurance of Missouri required each life insurance company doing business in that state to set aside, in connection with its group life and group accident and health insurance business, an additional "mass hazard or catastrophe reserve" in an amount equal to two per cent of net premiums received for such insurance during each year until the reserve so accumulated should equal fifty per cent of such net premiums received in one year on all

such insurance. The amount of the reserve so required of Colonial was $78,488.53. If such reserve is allowable as a deduction in calculating net income in South Carolina, the proportionate amount allocable to Colonial's South Carolina policies would be $8,724.29. Colonial contends that it is deductible because a letter from the Chief Insurance Commissioner of South Carolina to Mr. Bradford, auditor of South Carolina Tax Commission, dated February 13, 1964, relating to Mr. Bradford's audit of Colonial, contains the following statement:

"In the case of Colonial Life & Accident Insurance Company, which is presently doing business in thirty-four states and the District of Columbia, there are additional reserve requirements imposed by several of these states that must be met. In any event these additional reserve requirements imposed by the several states are adopted by us since to do otherwise would leave the policyholders of this State unprotected. Additionally, it would cause an overstatement of its assets by the amount of reserve liability incurred while doing business in other states.

I thought perhaps these general comments may be of some assistance to you. Should you have any questions that you think we might be able to answer, we will be most happy to cooperate with you."

To avail himself of a deduction in the calculation of a tax, taxpayer must bring himself squarely within the terms of a statute expressly authorizing it. *Southern Weaving Co. v. Query*, 206 S. C. 307, 34 S. E. (2d) 51; *Fennell v. South Carolina Tax Commission*, 233 S. C. 43, 103 S. E. (2d) 424. We agree with the circuit judge in his conclusion that the "general comments" in the Commissioner's letter with reference to his "adoption" of the additional reserve requirements of "the several states" are insufficient to support appellant's contention that the additional "mass hazard or catastrophe reserve" ordered in Missouri was "required by the Commissioner" within the meaning of the proviso in 37-130.1.

Appellant further argues that despite the fact that not over three per cent of its business is life insurance it is entitled under 37-130.1, as a life insurance company, to deduct, in its computation of license tax, all additions to reserves for unreported and unpaid claims as required by the Insurance Commissioner. It assumes that, regardless of how small its life insurance business is in proportion to its other insurance business, it may elect to classify itself as a life insurance company where such classification will be beneficial to it from the standpoint of taxation. This argument disregards the realities of the matter and the fact that the General Assembly has expressly differentiated between the kind of reserve deductible in respect of life insurance and that which is deductible in respect of other kinds, such as health and accident insurance. 37-130.1 permits deduction of additions to policy reserves, such as reserves for unreported and unpaid claims, in respect of life insurance; so far as concerns other kinds of insurance, deductible reserves are expressly limited by 37-130.2, to "unearned premium reserves." In its adjustment of the returns in question it appears that the Tax Commission acorded this treatment to Colonial, allowing deduction of reserves for unreported and unpaid claims in respect of Colonial's life insurance policies and the life features of its combination policies, and allowing deduction of unearned premium reserves only, in respect of its other policies.

In January, 1960, Colonial's 1958 return was reviewed by an agent of the Tax Commission, who agreed with Colonial on a basis for calculation of the 1958 tax; and Colonial thereupon paid the tax as so computed. Thereafter, following a reexamination of the return in 1964, the Commission, rejecting the method agreed upon between its auditor and Colonial in 1960, determined that Colonial's liability for 1958 was $1,329.85 more than the amount shown on its return for that year, and accordingly made a deficiency assessment of $1,329.85, plus interest computed to July 15, 1964, in the amount of $398.96,

making a total of $1,728.81. Colonial contends that the Commission is estopped to recover the additional assessment for that year by reason of its agent's agreement, in 1960, as to the method for computing Colonial's tax liability, and by the Commission's acceptance of the tax paid in reliance upon that agreement. Conceding that a governmental agency is not estopped, with reference to enforcement of tax laws, by previous acts or conduct of its agents pertaining to determination of tax liabilities, *Heyward v. South Carolina Tax Commission*, 240 S. C. 347, 126 S. E. (2d) 15, Colonial argues that an exception should be made here because the agreement between its agents and the agent of the Commission related to the method of computing the tax, not to any erroneous calculation of its amount, and also for the reason that there was no statute prescribing the method of such calculation. But the statutes to which we have referred do indicate, in general terms, the basis for computation of the tax; and the Commission had the right to formulate in detail a reasonable method for such computation in accordance with its interpretation of them, which method it appears to have followed since 1963. It was therefore within the Commission's right and duty, in its review of Colonial's previous returns, to adjust the tax liability in accordance with the method of computation then adopted by it. To limit its review to the correction of mathematical errors would be to restrict unduly its function of assessing, as well as collecting, the tax.

As before noted, 37-130.4 provides that if the license tax is not paid when originally due interest at the rate of six per cent per annum is to be added from that date to the date of payment. In the present case we are concerned only with the interest, in the amount of $398.96, added by the Commission to the deficiency assessment for the year 1958. Appellant argues that it should be absolved from liability for such interest because the tax for 1958, calculated in accordance with the formula then used by the Commission and agreed upon between the appellant and the

Commission's auditor, was promptly paid. There is merit in this contention, and to sustain it requires neither resort to estoppel nor violence to the general rule, (51 Am. Jur., Taxation, Section 975, page 852), that the taxpayer's liability for penalty or interest cannot be avoided upon the ground of his belief, or of his contention made in good faith, that he is not liable for the tax. Although not so denominated in the statute, the added interest is, under the facts in this case, in the nature of a penalty; and we think its imposition would be inequitable. For it seems clear from the record here that until the Commission's revised report, in 1964, of its examination of appellant's returns, the correct amount of the tax liability for 1958 was not determinable with certainty by the appellant. Until July 1, 1964, when it received notice from the Commission of the correct amount of its tax liability, calculated under the Commission's revised formula, it had no opportunity to pay the tax under protest and bring suit for recovery of such portion as it might conceive to have been wrongfully assessed. Cf. *Dravo Contracting Co. v. James* (C. C. A. 4), 114 F. (2d) 242, 147 A. L. R. 135, cert. den. 312 U. S. 678, 61 S. Ct. 450, 85 L. Ed. 1117, reh. den. 312 U. S. 714, 61 S. Ct. 620, 85 L. Ed. 1144.

The decree under appeal is reversed insofar as it purports to charge appellant with interest on underpayment of its license tax for 1958; in all other respects it is affirmed.

Affirmed in part; reversed in part.

Moss, C. J. and Lewis, Bussey and Brailsford, JJ., concur.