20461

Fred W. and Wilma M. SEWARD, Appellants, v. SOUTH CARO-LINA TAX COMMISSION et al., Respondents.

(236 S. E. (2d) 198)

*Messrs. Dobson and Dobson,* of Greenville, *for Appellant,*

*Messrs. Daniel R. McLeod, Atty. Gen., Joe L. Allen, Jr., G. Lewis Argoe, Jr.,* and *John von Lehe, Asst. Attys. Gen.,* of Columbia, *for Respondent,*

June 30, 1977.

*Per Curiam:*

The plaintiffs (income tax payers) have appealed from the order of the lower court. That order sets forth and correctly disposes of all issues submitted to this Court. It will, with minor deletions, be printed as our directive. The lower court is

Affirmed.

NICHOLSON, Judge.

This case involves a suit for refund of income taxes for the years 1972, 1973 and 1974. The taxes were paid under protest and this action brought under the provisions of Section 65-2661 and 65-2662 of the South Carolina Code of Laws. The question presented is the propriety of the Tax

Commission's disallowance of claimed deductions arising from operating losses incurred by the plaintiffs in a cattle operation. Certain of the facts taken from the plaintiffs' Brief are not in dispute. They are:

"During the years 1972 through 1974 inclusive, plaintiffs' primary source of income was derived from various aspects of the Graduation Cap and Gown business. On or about November 15, 1972, Fred W. Seward entered into a purchase agreement with Premier Corporation of Fowlerville Michigan, whereby Mr. Seward agreed to purchase from Premier, two hundred (200) head of nonregistered commercial Angus, Hereford, and/or Crossbred breeding cows at $750.00 per animal or a total purchase price of $150,000.00 In connection with said purchase agreemeent, Mr. Seward simultaneously entered into a management contract with Premier Corporation, dated November 15, 1972, whereby Premier agreed to feed, care for, breed and do whatever else was necessary for the wellbeing of the two hundred (200) head of cattle being purchased by Mr. Seward. On or about March 15, 1974, Mr,. Seward purchased fifty (50) head of pure bred Angus cows at $1,500.00 per animal, for a total purchase price of $75,000.00. In connection with this purchase, Mr. Seward entered into a management contract similar to that of November 15, 1972. During the years 1972 through 1974 inclusive, Mr. Seward was engaged in the business of cattle breeding for profit. During this period of time, none of the cattle were physically maintained in the State of South Carolina.

"A separate market exists for managed breeding herds such as those held by Mr. Seward, and he held these cattle primarily for breeding purposes and not for sale in the ordinary course of his cattle business. The method by which Mr. Seward intended to realize an economic gain in regard to these breeding herds was primarily through upbreeding of the herds.

"Plaintiffs incurred losses from their cattle operation during the years 1972, 1973 and 1974 in the following amounts:

| | |
|---|---|
| 1972 | $ 39,821.00 |
| 1973 | $127,997.44 |
| 1974 | $ 79,860.00" |

Additionally it is alleged in the Complaint and admitted in the Answer that the above losses were operating losses resulting from expenditures for cattle maintenance and from depreciation and interest expenses.

The Tax Commission has disallowed the losses in question for two stated reasons. Both of these arguments are in my judgment supported by the Income Tax Law of this State. I have therefore determined that the deductions in question were properly disallowed and that an additional assessment based on the disallowance of these deductions is proper.

The first argument of the Tax Commission is that because any gain from the sale of the cattle is taxable in the states in which the cattle are located, expenditures incurred in connection with these cattle can only be deducted against that income in tax returns (if any are required) to the states in which the cattle are located. Put another way, the Tax Commission submits that the expenses should not be deducted against South Carolina income because gain from the sale of the cattle is not taxed under the laws of this State. The plaintiffs on the other hand have argued that gain from the sale of the cattle is taxed by this State and, therefore, expenses attributable to these cattle should be deducted here.

Section 65-279.1(6) of the South Carolina Code provides for the allocation of gains and losses from the sale of tangible personal property.

The Section provides as follows:

"(6) Gains and losses from the sale of tangible personal property, other than tangible personal property held for sale to customers in the regular course of business, are allocable to this State, if:

"(a) The property had a situs in this State at the time of the sale, or

"(b) A corporation taxpayer's principal place of business or an individual taxpayer's domicile is in this State and the taxpayer is not taxable in the state in which the property had a situs."

Gain from the sale of the cattle in question, which are admittedly not "held for sale to customers in the regular course of (the plaintiffs') business," is taxed in this State if either of two circumstances exist: (a) The cattle have a situs here, or in the alternative, (b) The plaintiffs are not "taxable" in the state where the cattle have a situs. The first step in making a determination on this matter is necessarily to find the situs of the cattle. The general rule in the area of state and local taxation is that tangible personal property has a situs where it is situated or physically located. See *Curry v. McCanless*, 307 U. S. 357, 59 S. Ct. 900, 83 L. Ed. 1339, where numerous cases are collected which so hold. See also 71 Am. Jur. (2d), *State and Local Taxation*, Section 664. The plaintiffs have urged that since the enactment of a 1964 amendment to Section 65-202 of the Code, codified as Section 65-202(7.1) of the Code, all personal property of a resident has a situs in this State no matter where situated. However, the phrase "property having an actual situs in this State" which is defined by Section 65-202(7.1) is not used in Section 65-279.1(6)(a). The definition section was enacted as a part of Act No. 1002, Acts and Joint Resolutions of 1964 at 2305. A glance at the Act shows that the phrase defined applies to casualty losses only. The amendment added Section 65-259(6) of the Code which reads:

"Casualty losses sustained during the income year on *property * * * having an actual situs in this State."* (Emphasis added).

I therefore conclude that the definition contained in Section 65-202(7.1) of the Code pertains to casualty losses only and has no effect on Section 65-279.1(6)(a) of the Code. The term "situs" as used in Setcion 65-279.1(6)(a) remains unchanged and in my judgment, in the case of tangible personal proprerty, refers to the physical location of the property. The cattle are not located in this State and the Premier Corporation has no management area here. I therefore hold that the cattle in question do not have a situs in South Carolina.

The next step in deciding whether the gain from the sale of the cattle and therefore the expenditures connected with them can be allocated to South Carolina under Section 65-279.1(6)(b) is to determine whether the plaintiffs were "taxable in the state in which the property (the cattle) had a situs." The question may also be stated in terms of whether the cattle were "taxable" in the states in which they are located at the time of their sale. If the cattle were "taxable" in those states, gain from their sale is allocated there and not to South Carolina. The term "taxable" as used in Section 65-279.6 of the Code, the sales factor of the apportionment formula, means subject to tax, whether or not actually taxed. That is, a transaction is "taxable" when the state in which the transaction takes place has the power to tax the transaction and it is irrelevant whether or not that state chooses to levy a tax. See *Covington Fabrics Corporation v. South Carolina Tax Commission,* 264 S. C. 59, 212 S. E. (2d) 574. Section 65-279.6 and the Section now in question, Section 65-279.1, were enacted as parts of the same Act, Act No. 731, Acts and Joint Resolutions of 1958 at 1574. I therefore hold that the term "taxable" has the same meaning in Section 65-279.1 of the Code as it has in Section 65-279.6 of the Code. "Taxable" means subject to tax by a

state whether or not that state actually chooses to levy an income tax. The cattle in question were located in numerous states, mainly in the West or Midwest, however, it is not necessary to review the individual taxing statutes or absence of such statutes in these states. If the cattle were subject to tax in those states, they were "taxable" there and any gain from their sale is allocated to those states under Section 65-279.1 (6) (b) of the Code.

It is settled law that the sale of tangible personal property within a state's boundaries satisfies the constitutional requirement of due process and gives that state sufficient nexus or connection with the transaction to levy an income tax. See *Shaffer v. Carter,* 252 U. S. 37, 40 S. Ct. 221, 64 L. Ed. 445 (1920), and 71 Am. Jur. (2d), *State and Local Taxation,* Section 574, note 48. The numerous states in which the cattle in question are located have the power to tax the sale of those cattle. The plaintiffs are, therefore, "taxable" in the states in which the cattle are physically located at the time they are sold.

I therefore conclude that Section 65-279.1 (6) specifically allocates the gain from the sale of the cattle in question to states other than South Carolina. I base this conclusion on two holdings: (a) The cattle being tangible personal property have a situs in the states where they are physically located, and (b) The plaintiffs are "taxable" (subject to tax) in those states.

If the gains from the sale of the cattle are not taxed here, expenses attributable to those gains are not deductible against South Carolina income. This position is supported by the Minnesota case of *In Re Abbot's Estate, State v. Dancer,* 213 Minn. 289, 6 N. W. (2d) 466 (1942). There the court denied the deduction of expenditures made in connection with tangible property located outside Minnesota. It stated:

" * * * Such profits would have been received from tangible property outside the state and would have been prop-

erly taxable at the situs of the property. And expenses in connection with such property would be deductible in the tax returns to the state of the property's situs. The necessary conclusion is that profits could have been realized from tangible property outside of Minnesota, which profits would be taxable by such other state, and not by Minnesota; and that any expenses in connection with such property would be deductible in such other state, not in Minnesota. It follows that decedent's expenditures incurred in connection with tangible property outside the state, * * * should gold be found in paying quantities, are likewise not deductible in Minnesota."

I conclude and hold that the gains from the sale of the cattle are not taxable under the South Carolina statutes and, therefore, the expenditures in connection with these gains are not deductible here. *Colonial Life and Accident Insurance Co. v. South Carolina Tax Commission,* 248 S. C. 334, 149 S. E. (2d) 777, is a South Carolina case upholding the same principle.

The second argument of the defendant-Tax Commission is independent of the first. It produces the same result using different Code Sections. Both plaintiffs and defendant have approached this question on the theory, to which I ascribe, that if South Carolina would not tax a gain from the plaintiffs' cattle operation, it necessarily follows that a loss from the same business is not deductible. However, after initial agreement on this premise, the parties differ as to whether or not a gain from this cattle operation would be taxed in this State. The Tax Commission has argued that residents of this State are not taxed here on their gains from out-of-state businesses. The plaintiffs on the other hand have argued that a South Carolina resident is taxed here on all income from whatever source. From the evidence presented at the hearing before me, there can be no question that the Tax Commission has never sought to tax a resident on income earned from an out-of-state business. It

has also published regulations and rules to that effect. Although, of course, entitled to weight (*Ryder Truck Lines, Inc. v. South Carolina Tax Commission,* 248 S. C. 148, 149 S. E. (2d) 435; *Etiwan Fertilizer Co. v. South Carolina Tax Commission,* 217 S. C. 354, 60 S. E. (2d) 682), this administrative construction must be evaluated against the provisions of the statutes. Until 1958 a resident's income from an out-of-state business was specifically deducted in arriving at South Carolina taxable income under the provisions of Section 65-259(10) of the 1952 Code. In 1958 that section was repealed and replaced by the provisions of the Income Tax Apportionment Formula enacted as Act No. 731. Acts and Joint Resolutions of 1958. The pertinent provisions of that Act now appear as Sections 65-222.1, 65-222.2 and as Section 65-279.1, *et seq.,* of the Code.

I have concluded that the provisions of the Income Tax Apportionment Formula produce the same result as did Section 65-259(10) of the 1952 Code. That is to say, residents of this State are not taxed by South Carolina on income from an out-of-state business. Section 65-222.1 provides that if a business is conducted entirely within this State, the income tax is imposed on the entire net income from that business. Section 65-222.2 provides that if a business is conducted partly within this State and partly without this State, the income tax is imposed upon that part of the business conducted here. It is therefore obvious that if no part of a business is conducted here, South Carolina does not impose a tax on it. I therefore hold that South Carolina does not tax its residents on income from a business conducted entirely without this State. Conversely, I also hold that South Carolina does not allow its residents a deduction for losses incurred in a business conducted entirely without this State.

I therefore find and conclude with regard to the second argument of the Tax Commission that the plaintiffs are engaged in a business, the income from which would not be

taxed by this State and that the losses incurred by the plaintiffs from operating this business are therefore not deductible under the provisions of the Income Tax Law of South Carolina.

In summary, the deductions disallowed by the Tax Commission were properly disallowed. Two separate lines of authority support their disallowance. First, the deductions are expenditures incurred in connection with cattle having a situs without this State, the sales, of which are not taxed under our statutes. Specifically, Section 65-279.1(6) of the Code allocates the gains from the sale of the cattle to the states in which the cattle are located. Secondly, income from an out-of-state business is not taxed by this State and, conversely losses from such a business are not deductible.

Having concluded that the claimed deductions are not allowable, it is the judgment of this Court that the Complaint should be, and hereby is, dismissed and this action ended.

And It Is So Ordered.