20494

TEXACO, INC., Appellant, v. Robert C. WASSON, Wyatt E. Durham and H. Wayne Unger, Jr., Members of and collectively constituting the South Carolina Tax Commission, Respondents.

(237 S. E. (2d) 75)

*Robert P. Wilkins,* of Columbia, *for Appellant,*

*Daniel R. McLeod, Atty. Gen., Joe L. Allen, Jr., Dep. Atty. Gen., G. Lewis Argoe, Jr., and John C. von Lehe, Asst. Attys. Gen.,* of Columbia, *for Respondent,*

August 17, 1977.

RHODES, Justice.

The appellant (Texaco, Inc.) brought this action to recover $249,024 in South Carolina income taxes and interest (paid under protest) assessed against it by respondent (South Carolina Tax Commission) for the years 1970, 1971 and 1972. It appeals from a circuit court decree upholding the assessment and dismissing the action. We affirm as to the assessment of taxes but reverse as to interest.

Texaco operates a multi-state, unitary business, a portion of which business is conducted in South Carolina. From 1934 until 1969, Texaco paid taxes to this state under the apportionment method of reporting income as set forth in

S. C. Code § 12-7-1110, *et seq.* (1976). In 1969, S. C. Code § 12-7-700(8) (1976) was amended so as to eliminate the percentage depletion deduction for oil companies by reducing this deduction to cost depletion on out-of-state deposits. In 1969, on its own initiative, Texaco changed from the apportionment method of reporting its income to an accounting method whereby it allocated all production income away from this state. As evidenced by the large assessment made in this case against Texaco, the amendment enacted by the General Assembly as to depletion in 1969 would be very costly to Texaco if it continued to report on the apportionment basis. There is no question but that Texaco's unilateral decision to shift from an apportionment basis to another accounting basis in reporting its income in 1969 was due solely to the amendment of the statute above referred to.

Under the apportionment method, a corporation's entire net income is apportioned to this state by applying to that entire net income a percentage based on the "threefactor formula" of property, payroll, and sales in this state to the corporation's total property, payroll, and sales. Under separate accounting, books and records are kept which reflect only that income derived from sources within this state.

In the latter part of 1970, an audit was made of Texaco's 1967, 1968 and 1969 income tax years. The South Carolina Tax Commission agents who were sent to Houston to conduct the audit informed Texaco that its reporting method for 1969 was in error and that production income must be included in its total unitary, or apportionable, net income. This was the same method Texaco had been using since 1934. However, Texaco would not accept the apportionment method for 1969 because of the impact of the reduction in its depletion allowance. The appellant was described by one of the Tax Commission's agents in testimony as being "quite upset". The agents were told before they left Houston that Texaco would not voluntarily consent to the recommended basis of taxation. Upon the agents' return to

Columbia, an audit report for the years in question (1967, 1968, 1969) was forwarded to Texaco, placing the appellant on the apportionment method without allowing a deduction for percentage depletion. As stipulated by the parties, Texaco's response to this action by the respondent was to state that it would challenge the constitutionality of the elimination of the percentage depletion on out-of-state wells.

On May 27, 1971, a meeting was held in Columbia and was attended by Arnell M. Coker, Sr. (now deceased), the respondent's Director of Corporate Income Tax Division; L. R. Strickland, the respondent's Foreign Corporation Supervisor; M. D. Bradford, the respondent's agent; Laurence E. Johnson, the appellant's division tax attorney; and R. M. Clarke, the appellant's Division Tax Manager. This meeting was called for the purpose of discussing the proposed assessment and Texaco's position with regard to it. Although the respondent continued to maintain that percentage depletion would not be allowed, it agreed, as an alternative to litigation, to send its agents back to Houston to examine Texaco's records relative to a separate accounting computation.

On October 12, 1971, Arnell M. Coker, Sr., wrote R. M. Clarke a letter and enclosed a report of the examination for the years 1967, 1968 and 1969, as amended. The letter states:

"Please find enclosed a Report of Examination for South Carolina Income Tax, as amended, for the periods ended December 31, 1967, 1968, and 1969.

"This report has been revised based upon the reexamination by Mr. Bradford and Mr. Ingram of this office. The revised report represents a major change in the method of accounting for South Carolina Corporation Income Tax and it is agreed, by both Texaco, Inc., and the South Carolina Tax Commission, that such method shall and must be adhered to except and until such time as the South Carolina Tax Commission grants permission to change such method.

"Upon receipt of your remittance in the amount of $22,-197.19, the matter will be closed. Formal Notice of Assessment is enclosed herewith."

The method of accounting authorized by the above letter was the separate accounting method. The appellant filed its income tax returns on a separate accounting basis for the calendar years 1970, 1971 and 1972. During August of 1974, after the respondent had concluded an audit of the 1970, 1971 and 1972 returns of the appellant, the respondent notified the appellant that it could not file on a separate accounting basis and that it would be required to report its income on the apportionment method for the years 1970, 1971 and 1972.

Texaco pursued the matter through the administrative process to a hearing before the Tax Commission. The primary thrust of Texaco's position before the Tax Commission was not that separate accounting was the proper method of reporting. Rather, the principal ground relied upon was the fact that it had a letter from the earlier audit stating that it could use the method "until such time as the South Carolina Tax Commission grants permission to change". The Tax Commission found that it was not bound by the letter and that Texaco must report under the apportionment method for the three years in question. The earlier audit period (1967, 1968, 1969) was not in question in that Texaco was protected by the statute of limitations on assessments for those years.

Under S. C. Code § 12-7-1200 (1976), there is provision for the use of separate accounting by a multistate taxpayer under specific circumstances. This method may be used, when, in the opinion of the Tax Commission, the taxpayer maintains books of accounts and records which reflect "true net income arising from sources within this State". [1] Absent a finding by the Commission

---

[1] Section 12-7-1200. "When a taxpayer maintains books of accounts and records in such manner as to clearly reflect the true net income accruing or arising from sources within this State the return may, with

that the taxpayer's records reflect the true net income arising from sources within this State, the Commission is not empowered to allow or require separate accounting. If it allows or requires separate accounting without such a finding, it is acting beyond the scope of authority granted it by the statute. Thus, it is appropriate that we consider the question of what motivated respondent's personnel to grant approval for Texaco to use the separate accounting method in returning its income taxes.

The trial judge found that there was no proof on the part of Texaco showing that separate accounting by it met the requirements of Section 12-7-1200 in that separate accounting reflected Texaco's true net income arising from sources within this state. While the testimony of four witnesses was presented by the respondent in the hearing before the trial judge, Texaco presented no witnesses on its behalf despite the fact that two of its executives who were involved in the earlier audit were present at the hearing. Texaco contends that the burden of proof on this issue was on the respondent and that the respondent has not met this burden. Assuming without deciding that the burden of proof is so placed, we find that the respondent's position is clearly supported by the evidence.

The respondent's agent, a Mr. Barwick, who audited Texaco's returns for the 1970, 1971 and 1972 tax years, testified that the apportionment method properly reflected Texaco's income. He further testified that Texaco had reported on the separate accounting method and that when he proposed to change the appellant to the apportionment method, Texaco did not disagree with the apportionment method. Its only objection was that the letter of October 12,

---

the approval of the Commission, be based upon such books of account or records and the tax paid upon the net income so determined. When the Commission finds the books of account and records sufficiently clear, in its opinion, to show the true net income arising from sources within this State it may require the return to be filed upon such basis and calculate the tax due upon the net income so determined."

1971 gave it the right to use separate accounting. Barwick further testified that Texaco did not, during the audit or at any other time in his presence, state that separate accounting was the proper method under which it should report its income to South Carolina. The testimony of Carroll Brooks, the respondent's Income Tax Director, was to the same effect:

"Q. What has Texaco contended to you or in your presence as to the accuracy of their reporting on the separate accounting method in any year?

"A. I don't recall any contention that separate accounting was the proper way of reporting. As a matter of fact, on several occasions they have contended just the opposite, that the apportionment method was the proper method to use."

The finding by the trial judge that the evidence preponderates in favor of a conclusion that separate accounting did not accurately reflect Texaco's income for the years in question, in accordance with the demands of Section 12-7-1200, is fully supported by the record.

The trial judge further found that the decision by the respondent to grant separate accounting was made in order to avoid a threatened lawsuit. Agents of the respondent testified that separate accounting was allowed in order "to avoid further litigation by Texaco" and that "separate accounting was allowed as a way around the percentage depletion statute of the South Carolina Income Tax Code". We agree with the trial judge that the above-quoted testimony reflects the true reasons for the Tax Commission's position as stated in the letter of October 12, 1971.

On the basis of the above findings, we conclude that Texaco was not granted permission to use separate accounting for the years 1970, 1971 and 1972, for the reason that such method reflected "true net income arising from sources within this State." In view of this conclusion, it follows that the Tax Commission personnel did not act pursuant to the provisions of Section 12-7-1200 in granting the use of sepa-

rate accounting to the respondent. Accordingly, Texaco can not invoke this statute to preclude the respondent from assessing a tax under the apportionment method.

■ We are further of the opinion that Tax Commission personnel had no authority under any circumstances to prevent the Tax Commission from assessing a tax for future years not under audit when the above-described actions were taken. As previously stated, in this case permission was given to use separate accounting not only for the years under audit (1967, 1968, 1969), but also "until such time as the South Carolina Tax Commission grants permission to change such method". A careful reading of Section 12-7-1200 discloses no grant of authority to the Tax Commission to vest a taxpayer with immunity from a change in its method of income tax reporting for future years, that is, the years now in question (1970, 1971 and 1972).

■ While Texaco concedes the right of the respondent to change its method of accounting prospectively, it contends that the respondent cannot require a change in accounting methods retroactively, that is, prior to the date that appellant was given notice that it could no longer use separate accounting. The case of *Colonial Life & Accident Ins. Co. v. South Carolina Tax Comm.*, 248 S. C. 334, 149 S. E. (2d) 777 (1966), disposes of this issue. In that case, a Tax Commission agent in 1960 reviewed the taxpayer's return for 1958 and agreed with the method under which it was returned. In 1964, following a reexamination of the 1958 return, the Tax Commission assessed additional taxes for 1958. The taxpayer set up the 1960 agreement with the agent of the Tax Commission as a bar to the later assessment. This Court decided against the taxpayer in an opinion from which the following is quoted:

It was . . . within the Commission's right and duty, in its review of Colonial's previous returns, to adjust the tax liability in accordance with the method of computation *then*

adopted by it. To limit its review to the correction of mathematical errors would be to restrict unduly its function of assessing, as well as collecting, the tax. (emphasis added)

The appellant in the case at bar argues that the Tax Commission is estopped from assessing the additional taxes for the years in question. The burden of proof is upon the party who asserts estoppel. *Davis v. Sellers,* 229 S. C. 81, 91 S. E. (2d) 885 (1956). The trial judge held that the essential elements of the doctrine of estoppel, as set forth in *Frady v. Smith,* 247 S. C. 353, 147 S. E. (2d) 412 (1966), had not been made out. The court relied upon the further ground that estoppel does not run against the state, citing as authority for the latter principle the case of *Heyward v. South Carolina Tax Comm.,* 240 S. C. 347, 126 S. E. (2d) 15 (1962), wherein it was held:

The instant case involves the collection of taxes and the doctrine of estoppel cannot be applied against the respondent [Tax Commission].

The appellant recognizes the obstacle posed by the *Heyward* case to its contention, and it has asked for and received permission from this Court to argue against this decision. We are not convinced from such argument that the holding in *Heyward* should be disturbed, and we decline to do so. For the reasons set forth by the trial judge, as herein recited, we conclude that he was correct in refusing to apply the doctrine of estoppel.

The appellant next contends that even in the event that the respondent is not precluded from assessing taxes on the grounds heretofore argued, it is entitled to a refund of $2,283.83, which amount represents tax and interest attributable to the inclusion in Texaco's taxable income of certain royalty income. This income was derived from sulfur and salt royalties, the lands from which they came having been acquired by Texaco as prospective oil lands. The sulfur and salt deposits which produced the royalties were discovered as a result of searching for oil.

The question involved is whether S. C. Code § 12-7-1120 (4) (1976) allocates Texaco's sulfur and salt royalties away from this state. This section provides in pertinent part as follows:

The following items of income shall be specifically and directly allocated in accordance with the following provisions before apportionment of the remaining net income, and such items shall not be included in any factor of the apportionment formula:

Rents received from the lease or rental of real estate or tangible personal property, royalties received from tangible property, where the property leased or rented was not used in or was not connected with the trade or business of the taxpayer during the income year, less all related expenses, shall be allocated to the state in which the property was located at the time the income was derived.

The clear intent of this statute is that rents and royalties are allocated to the state in which the property is located (here, Texas and Louisiana) only when the property was not used in or connected with the taxpayer's trade or business. Because the sulfur and salt royalties are derived from properties connected with Texaco's exploration process, we are of the opinion that they are connected with its trade or business and are not allocable to other states. The fact that Texaco has contracted on a royalty basis with third parties to mine the salt and sulfur discovered on prospective oil lands does not render the income derived from this source unconnected with its trade or business. The properties from which the sulfur and salt were mined are unquestionably connected with Texaco's business of discovering oil. This income is properly a part of Texaco's apportionable, unitary income.

The final question for determination is whether the respondent is entitled to collect from the appellant $43,161 in assessed interest. Both the appellant and the respondent rely on the case of *Colonial Life & Accident Ins. Co. v. South Carolina Tax Comm., supra.* In the Colon-

ial Life case, the taxpayer followed a procedure agreed upon by the taxpayer and the Tax Commission's agent in a field audit and paid the amount of taxes thus determined to be due. The Commission several years later reversed this agreement and assessed the income tax by a different method resulting in additional taxes being due. The Commission then attempted to collect both the additional tax and interest. While this Court upheld the assessment of the additional tax, it refused to allow the collection of interest, holding that to do so under the circumstances would be inequitable.

The trial judge held that the *Colonial Life* case is factually distinguishable from the instant case. We feel, however, that there is sufficient similarity to warrant the application of the *Colonial Life* rationale to the present case.

In *Colonial Life,* the agreement was between the taxpayer and a Tax Commission auditor. There is no indication that the agreement was even in writing. In the case now on appeal, Texaco had a letter from the respondent's Director of Corporate Income Tax Division, requiring that Texaco file its income tax return in a certain manner. Texaco followed these instructions explicitly. Whether interest in this case be deemed a penalty or not, we feel that allowing its collection would be inequitable. The only avenue by which interest could have been avoided by the taxpayer was for the returns to have been filed using an accounting method contrary to that expressly ordered by the Commission. We consider the expectation of such conduct on the part of the taxpayer to be unreasonable.

The decree under appeal is reversed insofar as it charges the appellant with interest on the underpayment of its income taxes for the years 1970, 1971 and 1972; in all other respects the decree is affirmed.

Affirmed In Part; Reversed In Part.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.