21694

M. LOWENSTEIN & SONS, INC., Appellant, v. SOUTH CAROLINA
TAX COMMISSION, Robert C. Wasson, as Chairman, and Charles
N. Plowden and Raymond R. Finch, Jr., as Commissioners and
constituting the South Carolina Tax Commission, Respondents.

(290 S. E. (2d) 812)

*Melvin B. McKeown, Jr.,* of *Spratt, McKeown & Spratt,* York, *for appellant.*

*Deputy Atty. Gen. Joe L. Allen, Jr., Sr. Asst. Atty. Gen. G. Lewis Argoe, Jr.,* and *Asst. Atty. Gen. Jackson E. Fields, Jr.,* Columbia, *for respondents.*

April 14, 1982.

*Per Curiam:*

This appeal is from an order of the lower court affirming the disallowance by respondent South Carolina Tax Commission of deductions from appellant's South Carolina income tax for bad debt losses and for expenses by way of sales commissions. The additional taxes and interest resulting from the denial of these deductions were paid under protest and this action was brought to recover the amounts so paid. We are convinced that the findings and conclusions of the trial judge are proper. The judgment under appeal is accordingly affirmed. Let the order of the trial judge, with modifications, be reported as the judgment of this Court.

## ORDER OF JUDGE MOSS

The plaintiff, M. Lowenstein & Sons, Inc., paid the defendant the sum of $299,350.72 under protest. That amount had been assessed for additional income taxes by reason of the disallowance of certain deductions claimed in the 1972 and 1973 tax years. This action was commenced to recover the payment.

The disallowed deductions fall into two categories. One was the disallowance of payments to the plaintiff's wholly-owned subsidiary, Lowenstein International Sales Corp., that had been claimed by the plaintiff as necessary business expenses. The other involves the disallowance of payments to two of the plaintiff's other wholly-owned subsidiaries, Wamsutta of California and James Carpets, that had been claimed as bad debts.

The disallowance of payments to Lowenstein International Sales Corp. as necessary business expenses is first considered.

In 1971, the United States Congress, by Public Law 92-178, provided preferential tax treatment for United States companies selling manufactured goods in international commerce. Congress found that such businesses had been treated differently and less favorably from other United States companies that manufactured their products abroad. In order to correct such, legislation was enacted that permitted the plaintiff to organize a Domestic International Sales Corporation and to channel foreign sales through that corporation. The foreign sales corporation, here Lowenstein International Sales, is generally referred to as DISC. A DISC, under the federal law, is authorized to defer income from such sales for federal income tax purposes, however, no comparable provision is found in the South Carolina Code.

The plaintiff established its DISC and in the manner required by the federal statute conducted foreign sales through the DISC. The DISC had no employees and the sales were made by independent salesmen under contract with the DISC. All services and acts of the DISC were performed by the plaintiff's employees.

Under the federal law a DISC may do business in two ways. One is for the DISC to purchase the goods from the American manufacturer and resell the same, or as in the plaintiff's case, the DISC acts as a selling agent. The plaintiff's DISC contracted through plaintiff's employees with foreign sales agents who received compensation for their services. The plaintiff, however, transferred to the DISC funds in excess of the compensation or commission paid the foreign salesmen. It is the amount of funds in excess of these payments that was claimed and disallowed as a business expense deduction. It should be noted that the amounts paid by the DISC to the foreign sales agents has been allowed as a business expense deduction and only the amount in excess thereof is here involved.

Section 65-259 of the 1962 Code, now Section 12-7-700 of the 1976 Code, provides in part that:

"In computing net income there shall be allowed as deductions:

(1) All the ordinary and necessary expenses paid or accrued (in case the books are kept on the accrual basis) during the income year in carrying on any trade or business, including:

(c) As to corporations, wages of employees and salaries of officers, if reasonable in amount, for services actually rendered in producing such income.

(d) Management fees, if reasonable in amount and for services actually rendered in producing such income paid between affiliates, either parent, subsidiary or nonrelated corporations."

The DISC has no employees, hence no wages to employees nor salaries to officers were paid. No services were rendered by the DISC to the plaintiff unless it can be said that the execution of the contract with the foreign salesmen constituted such services. Those contracts were signed by plaintiff's officers purportedly acting for the DISC. Any service that could have been rendered by the DISC would necessarily have been performed by employees or officers of the plaintiff. The only substantive change in the business activities of the plaintiff after creating the DISC was that of theoretically

paying the sales commission to the foreign salesmen by the DISC.

If the DISC is to be recognized as conducting a separate business for South Carolina income tax purposes, then the DISC should be paying the plaintiff for services rendered by the plaintiff. No such payments were made. The plaintiff cannot shift its income to the DISC and escape State taxation by reason of a federal statute.

"But the Act (federal) cannot and does not change the South Carolina Constitution and statutory law." *Creative Displays, Inc. v. South Carolina Highway Dept.*, 272 S. C. 68, 248 S. E. (2d) 916.

In commenting about a DISC the following is stated in *34 Am. Jur. 2d, Federal Taxation 1980*, Section 8181, p. 777:

"A DISC (Domestic International Sales Corporation) is a tax-exempt domestic corporation a portion of whose profits may be eligible to be sheltered against tax on its stockholders indefinitely until the stockholders decide to pull out profits. *And the DISC can be a mere 'paper' corporation with the only expense involved being the keeping of detailed records of its profits, distributions, etc.*" (Emphasis added.)

The evidence here establishes the plaintiff's DISC to be a paper corporation. The plaintiff was asked:

"Q. Do you know of any other corporation that can exist and do business without incurring expenses of management; expenses of having employees; expenses of having somebody to do something for it?

A. No, sir." (Tr., p. 64, lines 15 through 19).

The Commission, therefore, properly disallowed the deduction of the payments to the DISC and the tax paid thereon cannot be refunded. *FMC Corporation v. Woods*, Tenn., 618 S. W. (2d) 307; *Bunge Corporation v. Commissioner of Revenue, Minn.*, 305 N. W. (2d) 779.

The remaining issue involves funds advanced by the plaintiff to two of its subsidiaries, Wamsutta of California, Inc. and James Carpet, Inc. The funds were not repaid and the amount thereof was claimed as a bad debt deduction by the

plaintiff. The deduction was disallowed by the Commission and we must look to the statute, Section 65-259(7), now 12-7-700(7), that provides in part as follows:

"In computing net income there shall be allowed as deductions:

(7) Debts ascertained to be worthless and actually charged off the books of the taxpayer within the income year or, in lieu of such deduction, a reasonable addition to a reserve for bad debts. A taxpayer may elect either method in its return for its first fiscal year ending after December 31, 1959, and such method must be followed in all subsequent years, except that upon application by the taxpayer the Commission may grant permission to change methods."

"Ascertain", as the term is used in the section, has been construed to mean:

"According to Webster, 'ascertain' is to make sure or certain; to free from obscurity or doubt, to determine. Whereas, 'estimate' means 'to fix the worth or value in a general way; to calculate approximately.' Obviously, the words are substantially opposite in meaning. It seems very clear to us that the legislature in the use of the word 'ascertain', had no intention to ascribe to that word any meaning different from that found in the dictionary. The clear intent to be gathered from the statute is, that the amount of the bad debt or claim should be actually determined before the company's books are closed, and not left to guess work. Any other interpretation would mean that a taxpayer could at any time prior to the end of the taxable year, or later, determine in his own mind that he would suffer a loss on account of certain bad debts. And loosely estimating what he thought the loss might be, charge off the amount so arrived at. This in our opinion would lead to an administrative confusion never intended by the general assembly." *Etiman Fertilizer Co. v. South Carolina Tax Commission,* 217 S. C. 354, 60 S. E. (2d) 682.

The facts reflect that some of the assets were sold, some were retained and that some payments were made without any legal liability to the plaintiff to make the same. The plaintiff set the value of the property retained.

The debts of the subsidiary that were paid without plaintiff's liability are not known. Under such circumstances the amount of the debts was not ascertained as required by the statute. Additionally, this is a deduction statute and the language is not to be liberally construed. The plaintiff must place himself squarely within the terms of the statute. *Chronicle Publishers v. South Carolina Tax Commission*, 244 S. C. 192, 136 S. E. (2d) 261; *Southern Weaving Co. v. Query*, 206 S. C. 307 ,34 S. E. (2d) 51; *Southern Soya Corp. v. Wasson*, 252 S. C. 484, 167 S. E. (2d) 311.

In addition to the above, the deductions were properly ■ disallowed because the interest income from the advances was not subject to taxation by this State. Section 65-279.1(1), now 12-7-1120(1), specifically allocates the interest income to the plaintiff's principal place of business, in this case outside of South Carolina. Because such income was not taxable by South Carolina the loss therefrom cannot be used to reduce the plaintiff's taxable income from other activities within the State. *Seward v. South Carolina Tax Commission*, 269 S. C. 52, 236 S. E. (2d) 198; *Avco Corporation v. Wasson*, 267 S. C. 581, 230 S. E. (2d) 614.

Notwithstanding the above, the deductions could not ■ be properly claimed for the additional reason that the funds were advanced the subsidiary to keep the two businesses going and to protect the plaintiff's good name and reputation. Repayment was conditioned upon the business success of the two subsidiaries. The advances to Wamsutta and James Carpet were not therefore loans that constitute a bad debt deduction within the context of the statute when unpaid. When repayment is conditioned upon the success of the business, the failure to repay is not a bad debt.

"Not all cases are so clear, however, and in determining whether advances to closely held corporations may properly be treated as loans for tax purposes, the courts have stressed one or more of a number of factors, including the debt-equity ratio, the presence of an agreement to maintain proportionality between the advances in question and acknowledged risk capital, the presence of tax avoidance motives, the use to which the funds were put, whether outside investors would

make such advances, and lack of reasonable expectation of repayment. *These are proper subjects of consideration, for the Congress evidently meant the significant factor to be whether the funds were advanced with reasonable expectations of repayment regardless of the success of the venture or were placed at the risk of the business,* and, as we shall show, each of the enumerated items does or may bear on the degree of the risk involved." *Gilbert v. Commissioner of Internal Revenue,* 2d Cir., 248 F. 2d 399, 406. For other cases see *49 F. P. D. 2d, Internal Revenue,* § 651. (Emphasis added.)

The evidence presented clearly reflects that repayment was conditioned upon the business success of the subsidiaries, hence the deductions were properly disallowed.

The plaintiff further has the burden of establishing the advances as loans within the context of the statute. While the notes indicate such a fact, the other evidence negates the same. It should also be noted that loans between a parent and a wholly-owned subsidiary are to be closely scrutinized. Substance and not form controls. (For cases see *49 F. P. D. 2d, Internal Revenue,* § 651, p. 141.)

It is the opinion of this Court that the deductions were properly disallowed and the Complaint should be dismissed and the action ended.

AND IT IS SO ORDERED.